UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GEORGE SAID THABET YACOUB,

Petitioner,

v.

BRUCE SCOTT, Warden of the Northwest
ICE Processing Center and
MARKWAYNE MULLIN, Secretary of the
U.S. Department of Homeland Security,

Respondents.

CASE NO. 2:26-cv-00783-TL

ORDER ON PETITION FOR
HABEAS CORPUS

This matter is before the Court on Petitioner George Said Thabet Yacoub's Petition for

Habeas Corpus ("habeas petition"). Dkt. No. 1. Respondents are Bruce Scott, Warden of the

Northwest ICE Processing Center ("NWIPC"), and Markwayne Mullin, Secretary of the United

States Department of Homeland Security ("DHS").[1] Having considered the habeas petition,

---

[1] Petitioner names "Alejandro Mayorkas" as the Secretary of DHS; however, Mr. Mayorkas has not been in this role for some time. On March 23, 2026, outgoing DHS Secretary Kristi Noem was substituted for Mr. Mayorkas pursuant to Federal Rule of Civil Procedure 25(d). *See* Dkt. No. 5 at 1 n.1. By operation of the same rule, the Court now substitutes current DHS Secretary Markwayne Mullin for Ms. Noem.

ORDER ON PETITION FOR HABEAS CORPUS – 1

Respondent's return memorandum[2] (Dkt. No. 5), Petitioner's reply (Dkt. No. 8), and the relevant record, the Court GRANTS IN PART AND DENIES IN PART the petition and ORDERS Respondents to provide Petitioner with a bond hearing.

## I.    BACKGROUND

Petitioner, a citizen of Egypt, was first apprehended by Border Patrol inside the United States near Dulzura, California, on October 29, 2024. Dkt. No. 7-2 (DHS removal hearing evidence packet) at 4–5 (DHS Form I-213). The DHS form documenting that encounter reports that Petitioner had crossed the United States–Mexico border near Tecate, California, some five hours earlier without an immigrant visa and "without being inspected by an immigration officer at a designated port of entry." *Id*. at 5.

Petitioner was taken into custody and transported to a Border Patrol facility. *Id.* at 6. The Parties agree that he has been detained continuously since that time. *See* Dkt. No. 1 at 3, 5; Dkt. No. 5 at 5, 8.

Petitioner was initially placed into expedited removal proceedings under 8 U.S.C. § 1225(b)(1). Dkt. No. 7-2 at 6. At some point, Petitioner apparently expressed either a fear of returning to Egypt or an intention to pursue asylum, and he was placed in full removal proceedings to pursue humanitarian relief. *See* Dkt. No. 7-1 (Notice to Appear) at 2 (citing 8 C.F.R. § 208.30). Full removal proceedings were instituted by filing of a Notice to Appear ("NTA") that was served on Petitioner on January 22, 2025. Dkt. No. 7-1 at 3.

That is the extent of the evidentiary record.[3] However, both Petitioner and Respondent appear to agree that a merits hearing in Petitioner's removal case was held on July 10, 2025, at

---

[2] Where used in the singular, the term "Respondent" includes only Respondent Mullin. Respondent Scott has not responded to the habeas petition and has not appeared in this case.

[3] While the Declaration of Deportation Officer Andron includes more details about Petitioner's removal proceedings, the declarant does not attest to having personal knowledge of these events. *See generally* Dkt. No. 6.

ORDER ON PETITION FOR HABEAS CORPUS – 2

which an immigration judge ("IJ") denied petitioner's asylum application, ordered Petitioner's removal, but granted withholding of removal from Egypt upon finding that Petitioner was likely to face persecution if returned there. Dkt. No. 1 at 4; Dkt. No. 5 at 5. Petitioner timely appealed the IJ's decision to the Board of Immigration Appeals ("BIA"), where his appeal has been fully briefed and pending since December 2, 2025. Dkt. No. 1 at 4; Dkt. No. 5 at 6.

On February 23, 2026, Petitioner filed a pro se proposed petition for writ of habeas corpus in this District. A case was opened, assigned number number 2:26-cv-00661 and assigned to the undersigned; however, Petitioner did not pay a filing fee in connection with his petition to apply to proceed in forma pauperis, even after an order notifying him of the filing deficiency and ordering him to take action. That petition appears to be abandoned. In light of the relief ordered herein, the Court will issue a separate order closing Case 2:26-cv-00661.

On March 26, 2026, Petitioner, now represented by counsel, filed the instant petition, arguing that his detention has become unjustifiably prolonged in violation of his due process rights and that he is entitled to immediate release. Dkt. No. 1. On January 30, 2026, Respondent filed a return to the habeas petition (Dkt. No. 5), along with a declaration by Deportation Officer Robert Andron, Jr. (Dkt. No. 6) and excerpts from Petitioner's immigration records including two relevant documents: the NTA that initiated full removal proceedings against Petitioner (Dkt. No. 7-1) and the DHS Form I-213 that documents Border Patrol's arrest of Petitioner (Dkt. No. 7-2 at 4–6). Petitioner filed a reply on March 30, 2026, 2026. Dkt. No. 8. The habeas petition is now ripe for the Court's review.

## II.    LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by a preponderance of the evidence that they are entitled to relief, *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir.

ORDER ON PETITION FOR HABEAS CORPUS – 3

2004)—that is, that they are "in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2241(c).

### III.   DISCUSSION

The Parties agree that Petitioner is detained pursuant to 8 U.S.C. § 1225(b). *See* Dkt. No. 5 at 6; Dkt. No. 8 at 1. Respondent acknowledges that Petitioner's detention has now become prolonged (Dkt. No. 5 at 8, 9) but asserts that his detention is mandatory under § 1225(b) (*Id.* at 6).

Although neither party offers an explanation of *why* Petitioner's detention is governed by Section 1225(b), or whether he is detained under Section 1225(b)(1) or (b)(2), the record supports a finding that Petitioner is detained pursuant to Section 1225(b)(1)(B)(ii). Petitioner was placed in expedited removal proceedings pursuant to Section 1225(b)(1)(A)(i) and (iii). *See* Dkt. No. 7-2 at 6. After he was determined to have a credible fear of persecution, he was "detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii); *see* Dkt. No. 7-1 at 2. In *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018), the Supreme Court read into this language a requirement of "mandat[ory] detention" for Section 1225(b)(1) detainees "throughout the completion of applicable proceedings." 583 U.S. at 302.[4]

Respondent correctly identifies the standard courts in this Circuit have used for determining whether prolonged detention under § 1225(b) has become unconstitutional—a five-part test created in *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1117–18 (W.D. Wash. 2019)—

---

[4] The Government relies on inapplicable authority for their proposition that when "the asylum officer or immigration judge finds a credible fear, the noncitizen is generally placed in full removal proceedings under 8 U.S.C. § 1229a, but remains subject to mandatory detention." Dkt. No. 5 at 4 (citing 8 C.F.R. § 208.30(f); 8 U.S.C. § 1225(b)(1)(B)(iii)(IV)). The cited regulation includes no reference to detention and provides that the United States Citizenship and Immigration Service may *either* initiate full removal proceedings upon a positive credible fear finding *or* adjudicate an asylum petition outside of removal proceedings. The statutory provision Respondent cites is even less supportive: while 1225(b)(1)(B)(iii)(IV) does include the only use of the words to "mandatory detention" in Section 1225, it applies to precisely the *opposite* circumstance, where "no credible fear of persecution" is found. *See* 8 U.S.C. § 1225(b)(1)(B)(iii).

ORDER ON PETITION FOR HABEAS CORPUS – 4

and both Respondent and Petitioner (in reply) make arguments within that framework. *See* Dkt. No. 5 at 7–9; Dkt. No. 8 at 2–5. Petitioner raises several additional arguments in his reply, none of which provide a separate basis for relief. *See* Dkt. No. 8 at 5–9. Likewise, the Government's lengthy discussion of its general application of 8 U.S.C. § 1225(b) (Dkt. No. 5 at 2–5) is not relevant to any disputed issue, and the Court did not consider it.

**A.      The *Banda* Factors**

Neither the Supreme Court nor the Ninth Circuit has settled on a test for assessing the constitutionality of prolonged mandatory detention for noncitizens detained pursuant to 8 U.S.C. § 1225. *See Banda,* 385 F. Supp. 3d at 1106. However, "nearly all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process." *Maliwat v. Scott*, No. C25-788, 2025 WL 2256711, at *3 (W.D. Wash. Aug. 7, 2025) (citation modified) (quoting *Banda*, 385 F. Supp. 3d at 1116); *see also Toktosunov v. Wamsley*, No. C25-1724, 2025 WL 3492858, at *3 (W.D. Wash. Dec. 5, 2025) (collecting cases).

In assessing the constitutionality of prolonged mandatory detention, the court in *Banda* declined to apply the test established in *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976), because balancing the *Mathews* factors does "not resolve the more fundamental issue of whether any procedure—such as a bond hearing—must be provided" and was "not particularly probative of whether prolonged mandatory detention has become unreasonable in a particular case." *Banda*, 385 F. Supp. 3d at 1106–07 (citation modified). Rather, the Court in *Banda* conducted a case-specific analysis considering the following factors:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the

ORDER ON PETITION FOR HABEAS CORPUS – 5

> likelihood that the removal proceedings will result in a final order of removal.

*Id*. at 1117 (quoting *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858–59 (D. Minn. 2019)). Courts in this District have now adopted the "*Banda* test" to assess when detention without a bond hearing under 8 U.S.C. § 1225(a) has become unjustifiably prolonged and thus violative of due process. *See, e.g.*, *Maliwat*, 2025 WL 2256711, at \*3–4; *Belqasim v. Bostock*, No. C25-1282, 2025 WL 3466971 (W.D. Wash. Oct. 28, 2025), *report and recommendation adopted sub nom Belqasim v. Hermosillo*, 2025 WL 3170929 (Nov. 13, 2025); *Hong v. Mayorkas*, No. C20-01784, 2022 WL 1078627, at \*4–5 (W.D. Wash. Apr. 11, 2022). Accordingly, the Court will apply the *Banda* test in determining whether Petitioner's prolonged detention without a bond hearing violates the Constitution.

### 1.  Total Length of Detention

The length of detention is "the most important factor." *Banda*, 385 F. Supp. 3d at 1118. Respondent agrees that this factor "should favor Petitioner." Dkt. No. 5 at 8. The "context" of a petitioner's circumstances is crucial to keep in mind, particularly that "[t]he detention that is being examined here is the detention of a human being who has never been found to pose a danger to the community or to be likely to flee if released." *Jamal A.*, 358 F. Supp. 3d at 859. "The longer mandatory detention continues . . . the harder it is to justify." *Murillo-Chavez v. Garland*, No. C22-303, 2022 WL 16555994, at \*5 (W.D. Wash. Aug. 30, 2022), *report and recommendation adopted*, 2022 WL 16553176 (Oct. 31, 2022).

As of the date of this Order, "Petitioner has been in detention for approximately 17 months, which is a very long time." *Banda*, 385 F. Supp. 3d at 1118–19 (finding detention of such length "strongly favors" a bond hearing). In other words, Petitioner—who has been accused of no crime, and who has demonstrated to an IJ's satisfaction that he faces persecution in the

ORDER ON PETITION FOR HABEAS CORPUS – 6

country of his birth—has lost nearly a year and a half of his life to civil detention pending the outcome of a slow administrative process. Courts in this District have frequently found that detention approaching or exceeding a year weighs in favor of granting a bond hearing. *See, Toktosunov*, 2025 WL 3492858, at *4 (16-month detention weighed in favor of granting a bond hearing); *Cardozo v. Bostock*, No. C25-871, 2025 WL 2592275, at *1 (W.D. Wash. Sept. 8, 2025) (same where detention was 12 to 13 months)); *Maliwat*, 2025 WL 2256711, at *2 ("nearly" 12 months); *Rahman v. Garland*, No. C24-2132, 2025 WL 1920341, at *3 (W.D. Wash. June 26, 2025), *report and recommendation adopted sub nom. Anisur R. v. Garland*, 2025 WL 1919252 (July 11, 2025) ("almost" 12 months); *Ashemuke v. ICE Field Off. Dir.*, No. C23-1592, 2024 WL 1683797, at *4 (W.D. Wash. Feb. 29, 2024), *report and recommendation adopted*, 2024 WL 1676681 (Apr. 18, 2024) (11 months).

Therefore, the Court finds that the first *Banda* factor weighs heavily in favor of granting a bond hearing.

### 2.    Likely Duration of Future Detention

The second factor for the Court to consider is the likely duration of future detention. *Banda*, 385 F. Supp. 3d at 1118. Respondent asserts that "any estimate of future pre-order detention would be speculative," and therefore "this Court should find this factor to be neutral." Dkt. No. 5 at 8. Petitioner rightly notes, though, that his "proceedings are likely to continue for a significant period of time," particularly if they involve a Ninth Circuit appeal. Dkt. No. 8 at 3; *see Banda*, 385 F. Supp. 3d at 1119 ("Petitioner only recently filed his appeal of the IJ's removal order with the BIA. If the BIA affirms, petitioner will have the opportunity to seek review in the Ninth Circuit. This process may take up to two years or longer. This factor favors granting petitioner a bond hearing.") Respondent does not distinguish the facts here from the similarly "speculative" length of future proceedings at issue in *Banda*, nor shows why, if the facts are *not*

distinguishable, this Court should reach a different conclusion than the *Banda* court whose test it applies.

The Court also finds it relevant to this factor that, if and when Petitioner's order of removal does become final, it cannot be executed to remove him to Egypt because he has been granted withholding of removal. Deportation Officer Andron's declaration indicates that, "[o]nce there is a final order in this case, ERO[5] intends to pursue the third country removal process." Dkt. No. 6 ¶ 11. But any attempt at third-country removal will implicate additional administrative processes that must account for the search for a country willing to accept Petitioner's removal to its territory, as well as assessment and/or adjudication of any fear expressed by Petitioner with regard to the country or countries ultimately designated for his removal. Petitioner's already prolonged detention could drag on for additional months or years, only to eventually become unreasonably prolonged under *Zadvydas*—all without serving the putative goals of immigration enforcement.

Therefore, the Court finds that the second *Banda* factor weighs heavily in favor of granting a bond hearing.

### 3.    Conditions of Detention

Next, the Court considers the third *Banda* factor—the conditions of detention. 385 F. Supp. 3d at 1118. "The more that the conditions under which the noncitizen is being held resemble penal confinement, the stronger the argument that he or she is entitled to a bond hearing." *Diaz Reyes v. Wolf*, No. C20-0377, 2020 WL 6820903, at *6 (W.D. Wash. Aug. 7, 2020) (citation modified) (quoting *Jamal A.*, 358 F. Supp. at 860), *report and recommendation adopted as modified*, No. C20-0377, 2020 WL 6820822 (W.D. Wash. Nov. 20, 2020), *aff'd sub*

---

[5] "ERO" stands for "Enforcement and Removal Operations," a division within U.S. Immigration and Customs Enforcement, which is itself a division of DHS.

ORDER ON PETITION FOR HABEAS CORPUS – 8

*nom. Diaz Reyes v. Mayorkas*, No. 21-35142, 2021 WL 3082403 (9th Cir. July 21, 2021).

Respondent argues that this factor is neutral because "[t]here is no evidence in the record that his conditions are meaningfully different from those faced by other civil immigration detainees or so restrictive as to render his detention punitive[.]" Dkt. No. 5 at 8. Petitioner, on reply, does not address the conditions of his detention or otherwise apply this factor to the facts of his case. Instead, he concedes the possibility that "conditions at NWIPC are not meaningfully different from other civil detention settings"—a position well beyond the one Respondent actually took—but contends that he prevails on this element regardless because "conditions of confinement do not neutralize constitutional concerns." Dkt. No. 8 at 4.

Be that as it may, conditions of detention are a factor of the *Banda* analysis, and likely one Petitioner could have shown to weigh in his favor. Instead, Petitioner's non-argument as to the conditions of his detention amounts to a waiver of his opportunity to present evidence or argument about them.[6] With "a total lack of evidence regarding the conditions of detention at NWIPC" from either Party, the Court must find this factor neutral. *Fadul Mohamed v. Immigr. & Customs Enf't Field Off. Dir.*, No. C26-181, 2026 WL 497096, at *5 (W.D. Wash. Feb. 23, 2026).

---

[6] Where detainees have addressed this factor directly and discussed the conditions of detention at NWIPC, this Court and others in this District have repeatedly found that conditions of detention at NWIPC weigh in favor of a bond hearing. For example, when a pro se Petitioner recounted extreme limitations on recreation, lack of privacy, insufficient access to legal research, and insufficient halal meal offerings, the Court found that this factor favored release, reasoning:

> Petitioner's account of conditions at NWIPC is consistent with evidence from other petitioners detained there; this Court and others in this District have found such conditions favor granting a bond hearing. In *Toktosunov*, where the petitioner was represented by counsel and provided evidence of the same conditions Petitioner alleges here, Respondent (along with other government respondents named in that case) "conceded that this factor 'likely favors petitioner.'"

*Fadul Mohamed v. Immigr. & Customs Enf't Field Off. Dir.*, No. C26-181, 2026 WL 497096, at *5 (W.D. Wash. Feb. 23, 2026) (citation modified) (quoting *Toktosunov*, 2025 WL 3492858, at *5, and citing *Diaz Reyes*, 2020 WL 6820903, at *7; *Maliwat*, 2025 WL 2256711, at *3).
    Here, unlike Mr. Fadul Mohamed, Petitioner is represented, but he has elected (through counsel) to forgo any evidence or argument on this point.

Therefore, the Court finds that the third *Banda* factor is neutral.

**4.      Delays in Removal Proceedings**

Under the fourth and fifth *Banda* factors, the Court considers delays in the removal proceedings caused by the detainee or by the government, respectively. 385 F. Supp. 3d at 1118. Respondent argues that "there is no attributable delay to" either Petitioner or the government, and the fourth and fifth factors therefore favor Petitioner and Respondent, respectively. Dkt. No. 5 at 8.

Petitioner appears to agree that neither Party has caused delay, but then, relying on a vague citation that makes little sense, conflates factors four and five into a single "factor [that] favors Petitioner." Dkt. No. 8 at 4. Petitioner's position, which would require the Court to weigh the absence of government-caused delay *against* Respondent, is unconvincing.

Respondent's position, on the other hand, is both reasonable and consistent with the way these factors were first applied in this District and Circuit. *See Banda*, 385 F. Supp. at 1119–20 (both factors favored a hearing where "petitioner did not engage in dilatory tactics" and "essentially all the delay . . . was . . . attributable to the Government."). Previously, however, this Court has adopted the position, then advanced by Respondent and co-respondents, that where "there is no evidence that either party has caused delay," "these factors are neutral." *Fadul Mohamed,* 2026 WL 497096, at *5; *see also Toktosunov*, 2025 WL 3492858, at *5 (finding both factors neutral). For the time being, the Court will hew to its existing practice and consider these factors to be neutral where the record contains no evidence of delay.

Therefore, the Court finds that the fourth and fifth *Banda* factor are neutral.

**5.      Likelihood That Proceedings Will Result in a Final Order of Removal**

Under, the sixth *Banda* factor, the Court considers "the likelihood that removal proceedings will culminate in a final order of removal." 385 F. Supp. 3d at 1120 (quoting *Jamal*

ORDER ON PETITION FOR HABEAS CORPUS – 10

*A.*, 358 F. Supp. 3d at 860). "In other words, the Court considers whether the noncitizen has asserted any defenses to removal." *Id.*

Respondent, noting the speculative nature of any such prediction, proposes that this factor should be neutral. Petitioner urges that "[t]hat uncertainty does not support detention—it underscores the absence of any predictable endpoint." Dkt. No. 8 at 4.[7]

In *Banda*, this factor was considered neutral where the petitioner had submitted an asylum application, the application had been denied, and the court did "not have sufficient information to determine whether the appeal [wa]s nonfrivolous or whether petitioner ultimately w[ould] prevail." 385 F. Supp. 3d at 1120.

As a general matter, this Court has weighed an immigration judge's past determinations as some evidence of the future disposition of an appeal, on the assumption that these determinations are more likely than not to be affirmed. *See*, *e.g. Fadul Mohamed*, 2025 WL 1920341, at *5 (where petitioner was appealing IJ's order of removal, factor weighed against granting a hearing); *Toktosunov,* 2025 WL 3492858, at *5–6 (opposite result where government was appealing IJ's grant of asylum). Keeping with this practice, the Court finds there is some likelihood that Petitioner's appeal will result in a final order of removal. Here, however, because the IJ granted withholding of removal, it remains entirely speculative whether the appeals process will result in an *executable* final order of removal. The record is silent as to what

---

[7] In his petition, though not in his *Banda* analysis, Petitioner argues that the fact that he was granted withholding of removal, which required the IJ to find a higher likelihood of harm, suggests "he is likely to succeed on the merits [of his appeal] because the Immigration Judge already found his persecution claims credible." Dkt. No. 1 at 6–7. The Court disagrees. The fact that an IJ granted withholding of removal to Egypt while denying asylum necessarily implies a finding that Petitioner was ineligible for asylum for a reason other than lacking a credible, well-founded fear. Likely, as Petitioner implies (*see id.*), he was found to be barred from asylum based on one of several executive actions restricting access to asylum for otherwise eligible individuals who present themselves at the United States border or who have entered the United States without inspection. Although Petitioner asserts that he "qualifies for an exemption" from this asylum bar, the IJ apparently disagreed. Because Petitioner does not explain the standard for exemptions or identify any legal error in the IJ's decision, the Court has no basis for finding it likely that the BIA would overturn the IJ's decision.

ORDER ON PETITION FOR HABEAS CORPUS – 11

countries Respondents might attempt to remove Petitioner to and what defenses he might raise against removal to each of those countries. The Court cannot predict what further proceedings may arise in relation to the execution of the removal order nor whether Petitioner, even with a final order of removal, might ultimately be removed.

Therefore, the Court finds the sixth *Banda* factor is neutral.

\* \* \*

In sum, two of the six *Banda* factors, including the most important factor, weigh in favor of granting Petitioner a bond hearing, four are neutral, and none weighs against granting a bond hearing. Given the weight of the factors that favor Petitioner, the Court finds that his detention has become unreasonable. *See Maliwat*, 2025 WL 2256711, at \*9 (finding petitioner entitled to a bond hearing when, as here, two factors favor petitioner, four factors are neutral, and none favors respondents); *see also Fadul Mohamed*, 2025 WL 1920341, at \*5 (same where three factors favor petitioner, two are neutral, and one favors respondents); *Rahman*, 2025 WL 1920341, at \*5 (same where four factors favor petitioner, one is neutral, and one favors respondents); *Hong*, 2022 WL 1078627, at \*7 (same where four factors favor petitioner, two are neutral, and none favors respondents).

**B.    Petitioner's Additional Arguments**

In his reply, in addition to his *Banda* analysis, Petitioner offers several other lines of argument in support of his single claim that his detention has become unreasonably prolonged with no opportunity for review. The Court addresses these briefly.

Petitioner's second line of argument is titled "DETENTION WITHOUT ANY AVAILABLE HEARING VIOLATES DUE PROCESS." Dkt. No. 8 at 5. As a statement of law, this is true for a noncitizen in Petitioner's position, whose detention has become unreasonably prolonged. But this is the principle underlying the *Banda* analysis, and it is applied via the *Banda*

ORDER ON PETITION FOR HABEAS CORPUS – 12

factors. As to the merits of Petitioner's claim, this section of argument has nothing distinct to offer. To the extent this portion of Petitioner's reply argues that immediate release is required, the Court addresses those arguments *infra* Section III.C.

Petitioner's third line of argument is titled "DETENTION BASED ON UNREVIEWED EXECUTIVE DETERMINATIONS VIOLATES DUE PROCESS." Dkt. No. 8 at 7. Here, Petitioner asserts that "ICE has unilaterally determined that Petitioner should remain detained based on generalized concerns such as flight risk or danger," and Petitioner has been denied any opportunity to challenge these findings. *Id*. This position is confusing because Petitioner, being detained under Section 1225(b), has likely not yet had *any* assessment of his flight risk or dangerousness, but is detained pursuant to Congress's action in drafting and enacting the INA. As the remainder of this section consists of general exhortations that prolonged detention without meaningful review is unconstitutional, it is otherwise indistinguishable from Petitioner's *Banda* argument for the same reasons as the preceding argument.

Petitioner's fourth line of argument, "DETENTION WITHOUT ANY MEANINGFUL PROCEDURAL SAFEGUARD FAILS UNDER MATHEWS," represents an attempt to apply the *Mathews* factors in order to analyze the lawfulness of Petitioner's ongoing detention. Dkt. No. 8 at 8 (citing *Mathews v. Eldridge*, 424 U.S. 319). This argument fails for several reasons. First, it is untimely: Petitioner did not analyze the *Mathews* factors in his petition, nor did Respondent in its opposition.[8] *See generally* Dkt. Nos. 1, 5. Second, courts in this District apply *Banda*, not *Matthews*, to claims of prolonged detention under Section 1225(b), and with good reason. *Matthews* balancing allows courts to weigh the adequacy of the process provided when a

---

[8] Precisely because doing so deprives the opposing party of an opportunity to be heard, parties are generally not permitted to present new arguments on reply that could have been, but were not, made in an opening brief. *See, e.g.*, *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) (affirming district court's refusal to consider an argument raised for the first time in reply).

person's liberty or property is taken away. But here, Petitioner alleges no inadequacy of process when he was arrested and thereby deprived of his liberty on October 29, 2024. *See generally* Dkt. Nos. 1, 8. The violation he alleges is not related to the process of deprivation, but the prolonged nature of his detention; *Mathews* balancing is ill-suited for such a claim.[9]

In short, none of Petitioner's additional arguments provide an additional basis for relief beyond what Petitioner has established through the *Banda* analysis.

**C.      Appropriate Relief**

Having found that Petitioner's detention has become unreasonable, the Court will now address his requests for relief. Petitioner asks the Court to order his immediate release, either with or without "bond of $1,500 or what the Court deems reasonable." Dkt. No. 1 at 7; *see also* Dkt. No. 8 at 5–7, 10. Respondent asks the Court to deny the Petition but, in the alternative, argues that the Court should "limit that relief to ordering the Immigration Court to conduct a bond hearing, rather than directing Petitioner's immediate release," and should not assume the immigration court's role of setting a specific bond amount. Dkt. No. 5 at 9.

Respondent is correct. Petitioner has not demonstrated (or alleged) that his detention is unlawful *per se*, only that his continued detention without "any hearing or neutral review" is unlawful now that it has become unreasonably prolonged. Dkt. No. 8 at 10; *see also* Dkt. No. 8 at 1, 5, 6, 7, 9. Petitioner's request for immediate release appears to rest on the mistaken belief that a bond hearing is not an "available" remedy this Court can order for a noncitizen detained under 8 U.S.C. 1225(b). *See* Dkt. No. 8 at 10. To the contrary, courts can and overwhelmingly do order bond hearings when granting habeas petitions of Section 1225(b) detainees. Because

---

[9] Petitioner alludes to a resurgent liberty interest flowing from his grant of withholding of removal (*see* Dkt. No. 8 at 8), but he does identify any secondary deprivation after the grant of withholding to which the *Mathews* analysis could be applied. As presented, Petitioner's *Mathews* argument is not sufficiently developed to support serious consideration.

ORDER ON PETITION FOR HABEAS CORPUS – 14

*Banda* stands for the rule that unreasonably prolonged detention under § 1225(b) *without a bond hearing* violates due process, the appropriate remedy for a habeas petition granted under *Banda* is an individualized bond hearing at which an immigration judge determines whether continued detention is necessary to protect the community or prevent the detainee's flight—the same hearing afforded to noncitizens lawfully detained under § 1226(a).

The Court acknowledges the concern Petitioner raises in his reply that a bond hearing would be futile because "under the present administration, Tacoma Immigration Judges are arbitrarily making individualized findings of 'flight risk' across the board without genuine independent review, therefore deeming [bond applicants] ineligible for release." Dkt. No. 8 at 6–7. But there is no evidence in the record supporting this assertion. Petitioner could have presented the sworn declaration of his counsel or another person who has personal knowledge of the practices of Tacoma Immigration Court judges, but he did not. Moreover, Petitioner raised this issue for the first time in reply, and Respondent has not been heard on the subject. *See supra* n.8. If timely raised and substantiated with evidence, Petitioner's arbitrariness concerns might, at most, have compelled the Court to order additional procedural protections—though not to substitute its discretion for the IJ's as to Petitioner's eligibility for bond. Under the circumstances, however, the Court will not take any action based merely on an unsupported assertion in a reply brief.

Consistent with the practice of this District, the Court will order Petitioner's bond hearing to be scheduled for a date within 14 days of this order. *See, e.g.*, *Cardozo*, 2025 WL 2592275, at *2 (rejecting timeline of 35 days ordered by report and recommendation and ordering bond hearing within 14 days); *Maliwat*, 2025 WL 2256711, at *1 (ordering bond hearing within 14 days); *Alvarado v. Clark*, No. C14-1322, 2014 WL 6901766, at *1 (W.D. Wash. Dec. 5, 2014) (same); *Rodriguez Vazquez v. Bostock*, 779 F. Supp. 3d 1239, 1263 (W.D. Wash. 2025) (ordering

ORDER ON PETITION FOR HABEAS CORPUS – 15

bond hearing within 14 days for petitioner misclassified as detained under 8 U.S.C. § 1225(b) rather than § 1226(a)); *but see Belqasim v. Hermosillo*, No. C25-1282, 2025 WL 3170929 (Nov. 13, 2025) (requiring hearing within seven days of order adopting report and recommendation). In lieu of a hearing, Respondents may comply with this order by releasing Petitioner.

### IV.   CONCLUSION

Accordingly, the Court ORDERS as follows:

(1)   Petitioner's petition for writ of habeas corpus (Dkt. No. 1) is GRANTED;

(2)   Petitioner's request for immediate release is DENIED;

(3)   Petitioner's request for a preliminary injunction "while this Court considers the present habeas petition" (Dkt. No. 1 at 7) is DENIED AS MOOT.

(4)   Within **fourteen (14) days** of this Order, Respondents SHALL either release Petitioner or provide him with a bond hearing before an immigration judge.

Dated this 23rd day of April, 2026.

Tana Lin
United States District Judge

ORDER ON PETITION FOR HABEAS CORPUS – 16